UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SCHMID ENTERPRISES, INC | CIVIL ACTION NO. 07-cv-8552 |
| VERSUS | SECTION "F" |
| | JUDGE MARTIN L. C. FELDMAN |
| THE STANDARD FIRE INSURANCE | MAGISTRATE (5) |
| COMPANY AND WILLIAM GASSEN | MAGISTRATE ALMA L. CHASEZ |

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
AGAINST SCHMID ENTERPRISES, INC. AND
STANDARD FIRE INSURANCE COMPANY**

**MAY IT PLEASE THE COURT:**

MarineMax Tx, LP ("MarineMax") respectfully moves this Honorable Court to dismiss the claims of Schmid Enterprises, Inc. ("Schmid Inc.") and Standard Fire Insurance Company ("Standard Fire") because Dennis Schmid signed a Release in favor of MarineMax, effective against both Schmid Inc. and Standard Fire, which bars the claims of both.

**BACKGROUND**

Schmid, Inc. filed suit against MarineMax Tx, LP, ("MarineMax") *inter alia*, relating to the handling and repairs to the Cleopatra, a Sea Ray pleasure craft. Schmid Inc. alleges that, in the aftermath of Hurricane Katrina (which made landfall on August 29, 2005), the Cleopatra was damaged as a result of wind and rain.[1] After eight months, Standard Fire, Schmid Inc's insurer, inspected the Cleopatra, then moved the Cleopatra to the north shore of Lake Ponchartrain for repairs, where the boat remained for five months.[2] At some point thereafter (and well more than

---

[1] Schmid's Petition, paragraph IV (CM/ECF Doc. No. 1-2)
[2] *Id.*, paragraph VII – VIII (CM/ECF Doc. No. 1-2).

a year after the hurricane), the Cleopatra was shipped to MarineMax.[3] According to Schmid, Inc., MarineMax concluded it was unable to complete the repairs.[4]

Schmid Inc. filed suit against The Standard Fire Insurance Company, as well as every party whom Schmid, Inc. alleges stored, moved, or touched the Cleopatra. This includes William Gassen, whom Schmid alleges first failed to repair the Cleopatra,[5] National Liquidators, which requested that the Cleopatra be salvaged,[6] Pearl River Navigation, LLC, which removed the Cleopatra with the intent of salvaging it,[7] as well as MarineMax.

Dennis Schmid signed a release with MarineMax before the Cleopatra was shipped to a repairer. In exchange for MarineMax not charging Schmid for storage or repairs while the Cleopatra was in MarineMax's care, Schmid, on behalf of himself and his insurer, released MarineMax from any and all legal actions under any theory of law.[8] Schmid now claims the Release was obtained by duress and is therefore invalid.[9] Because the Release valid and binding on Schmid and Standard Fire, MarineMax respectfully moves for this Court to grant summary judgment and that Schmid's and Standard Fire's claims be dismissed with prejudice.

## **CHOICE OF LAW**

Schmid Inc. is a Delaware corporation.[10] MarineMax is a Texas corporation.[11] The Cleopatra was sent to MarineMax in Texas; the Release was signed in Texas by MarineMax and Dennis Schmid, a Texas domiciliary.[12] The Release also stipulates that Texas law will

---

[3] Schmid's Second (incorrectly labeled "first") supplemental and amended Complaint, paragraphs 6 – 8 (CM/ECF Doc. No. 41).
[4] *Id.*
[5] Schmid's Petition, paragraph X (CM/ECF Doc. No. 1-2)
[6] Schmid's Second Complaint, paragraph 5-6 (CM/ECF Doc. No. 41).
[7] Schmid's Second Complaint, paragraphs 3-6 (CM/ECF Doc. No. 41).
[8] The Release, attached hereto as Exhibit "A," paragraph 1.
[9] *Id*, paragraph 9.
[10] See Schmid's Petition, (CM/ECF Doc. No. 1-2)
[11] See Schmid's Amended Complaint, (CM/ECF Doc. No. 41).
[12] Exhibit "A," paragraph 1.

apply.[13] All the actions relative to Schmid Inc's claims against MarineMax occurred in Texas. Under Louisiana's choice-of-law rules, Texas law applies. However, for purposes of this Motion, it is irrelevant whether Texas or Louisiana law applies because the Release is a valid and binding contract between the parties under either state's law and because Schmid, Inc's claim that the Contract is invalid for duress is unsuccessful under either state's law.

## STANDARD OF REVIEW

**1.  Motion for Summary Judgment**

A motion for summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[14] Pursuant Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions (of the record) which it believes demonstrates the absence of genuine issues of material fact."[15]

The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the non-movant's case.[16] In so demonstrating, the movant may rely on the absence of evidence to support essential elements of the opposing party's claim.[17] Moreover, if the record taken as a whole cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.[18] The moving party need not submit evidentiary documents to properly support its motion, but need only point

---

[13] *Id.*, paragraph 5.
[14] Fed. R. Civ. Proc. 56(c).
[15] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871 (1990).
[16] *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2002).
[17] *Int'l Assoc. of Machinists and Aerospace Workers AFL-CIO, Lodge No. 2504 v. Intercontinental Mfg. Co., Inc.*, 812 F.2d 219, 222 (5th Cir. 1987) citing *Fontenot v. UpJohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).
[18] *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1286 (5th Cir. 1990).

out the absence of evidence supporting the essential elements of the opposing party's case.[19] Once a proper motion for summary judgment has been made, the non-moving party must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.[20]

**2.       Interpretation and Effect of the Release**

A release extinguishes a claim or cause of action and bars recovery on the released matter.[21] Because the Release is valid on its face, it is, unless set aside, a complete bar to any action based on matters covered in the release.[22] In a summary judgment context, the burden shifts to Schmid, Inc. and Standard Fire to offer proof that the release should be set aside.[23]

A release is subject to the rules of governing contract interpretation.[24] Absent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract, regardless of whether the party read it or thought it had different terms.[25] When parties enter into an agreement based on a writing that is not ambiguous, the court will give effect to the parties' intention as expressed in the writing.[26]

## THE RELEASE PROHIBITS SCHMID INC'S SUIT

**1.       The Release Is Effective against Schmid, Inc. and Standard Fire**

The Release, entered into on July 12, 2007, recites an ongoing dispute regarding storage and servicing of the Cleopatra. Dennis Schmid signed the Release, stating that in exchange for MarineMax releasing the Cleopatra and not charging Schmid for storage and for services rendered, Schmid, on behalf of himself, his heirs, personal representatives,

---

[19] *Saunders v. Michelin Tire Corp.*, 942 F.2d 299, 301 (5th Cir. 1991).
[20] *Celotex*, 477 U.S. at 324.
[21] *Dresser Inds., Inc. v. Page Petroleum, Inc.,* 853 S.W.2d 505, 508 (Tex.1993).
[22] *Id.*
[23] *Sweeney v. Taco Bell, Inc.,* 824 S.W.2d 289, 291 (Tex.App.-Fort Worth 1992, writ denied); *Deer Creek Ltd.,* 792 S.W.2d at 201.
[24] *Tenneco, Inc. v. Enter. Prods. Co.,* 925 S.W.2d 640, 646 (Tex.1996).
[25] *In re McKinney,* 167 S.W.3d 833, 835 (Tex.2005) (citing *EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 90 (Tex.1996)).
[26] *Id.* (citing *Sun Oil Co. v. Madeley,* 626 S.W.2d 726, 731 (Tex.1981)).

successors, assigns, employees, agents, attorneys, servants, and insurers, releases MarineMax "from any and all legal action."[27] The Release facially prohibits Schmid Inc's suit and the cross-claim brought by Standard Fire. Schmid Inc. admits that Dennis Schmid's signature is genuine and that Mr. Schmid had the authority to bind Schmid, Inc.[28] Schmid cannot assert ambiguity in the scope of the contract and Schmid does not assert ambiguity in the release.[29] Therefore the signed Release is effective and bars the suit filed by Schmid Inc. and the cross-claim filed by Standard Fire. MarineMax respectfully requests Schmid Inc's and Standard Fire's claims be dismissed with prejudice.

**2.    The Release Was Not Induced By Duress.**

    **A.    Legal Standard for Duress**

Schmid, Inc. attempts to avoid the efficacy of the Release by alleging, in its Second Amended Complaint, that the Release was induced through duress and is therefore invalid. Under Texas law, what constitutes duress is a question of law, making summary judgment proper.[30] Schmid, Inc. has the burden to prove duress.[31] Schmid, Inc. cannot prove duress unless it can prove (1) MarineMax made a threat to do something it had no right to do; (2) there is some illegal exaction or some fraud or deception; and (3) the restraint is imminent and such as to destroy free agency without present means of protection.[32] A charge of economic duress

---

[27] Exhibit "A," paragraph 2.
[28] See Schmid's responses to Requests for Admission, attached hereto as Exhibit "B."
[29] See e.g. *Gay v. Aramark Uniform and Career Apparel, Inc.*, 2007 WL 4190781 (S.D. Tex.) (Rosenthal, J.) (granting summary judgment on a Release despite claims of duress and ambiguity).
[30] See *National Corporate Tax Credit, Inc. VIII v. JNP Properties, Inc.*, 2009 WL 1161109 at *13 (Tex.App. – Austin 2009); see also *Windham v. Alexander, Weston & Poehner, P.C.,* 887 S.W.2d 182, 185 (Tex.App.-Texarkana 1994, writ denied) (issue of what constitutes duress is question of law).
[31] *Sweeney v. Taco Bell, Inc.,* 824 S.W.2d 289, 291 (Tex.App.-Fort Worth 1992, writ denied); *Deer Creek Ltd.,* 792 S.W.2d at 201.
[32] *Deer Creek Ltd. v. North Am. Mortgage Co.,* 792 S.W.2d 198, 200 (Tex.App.-Dallas 1990, no writ); *Tower Contracting Co. v. Burden Bros., Inc.,* 482 S.W.2d 330, 335 (Tex.Civ.App.-Dallas 1972, writ ref'd n.r.e.). ("[I]n all its forms (whether called duress, implied duress, business compulsion, economic duress or duress of property)," a claim of duress requires a showing of "improper or unlawful conduct or threat of improper or unlawful conduct that is intended to and does interfere with

"must be based on the acts or conduct of the opposite party and not merely on the necessities of the purported victim, or on his fear of what a third person might do, and the mere fact that a person enters into a contract with reluctance, or as a result of the pressure of business circumstances, financial embarrassment, or economic necessity, does not, of itself, constitute business compulsion or economic duress invalidating the contract."[33] Should Schmid argue for the application of Louisiana law, the requirements are stronger because in Louisiana, "financial strait does not constitute duress."[34]

### B. Schmid's allegations of duress are legally inadequate.

Schmid Inc. alleges the Release is invalid for duress because, according to Schmid, MarineMax refused to turn over the Cleopatra to Schmid, Inc. when requested. In its answers to interrogatories, Schmid avers as follows to claim duress:

> Despite assurances by MarineMax that they could in fact repair the vessel, after approximately sixteen months, petitioner was informed by the MarineMax general manager, Rick Gaffen, that they in fact could not repair the vessel. Mr. Gaffen suggested South Texas Yachts was able to repair the vessel . . . MarineMax made arrangements to transport the Cleopatra to South Texas Yachts. Approximately two days later, Mr. Gaffen advised Dennis Schmid at approximately 8:00 A.M. that the boat was prepared to be shipped to South Texas at 9:00 A.M., but would not be shipped unless Dennis Schmid signed a release. Thus, in order that the Cleopatra be allowed to move from the МarineMax facility so that the vessel could be secured to stop additional damage and to allow repairs to begin, Dennis Schmid signed the release.[35]

---

another person's exercise of free will and judgment.") *Dallas County Cmty. Coll. Dist. v. Bolton,* 185 S.W.3d 868, 878-79 (Tex.2005). "Threatening to do that which a party has a legal right to do cannot form the basis of a claim of duress by business compulsion." *Sanders v. Republic Nat'l Bank,* 389 S.W.2d 551, 554 (Tex.Civ.App.-Tyler 1965, no writ);

[33] *First Tex. Sav. Ass'n v. Dicker Ctr.,* 631 S.W.2d 179, 186 (Tex.App.-Tyler 1982, no writ).

[34] *Shepherd v. Allstate Ins. Co.,* 562 So.2d 1099 (La. App. 4th Cir.1990) (citing *Wilson v. Aetna Casualty & Sur. Co.,* 228 So.2d 229 (La.App. 3rd Cir. 1969)).

[35] Schmid's Response to MarineMax's Interrogatories, attached hereto as Exhibit "C," Interrogatory No. 3.

Schmid further claims, in explaining how Dennis Schmid was affected by the above: "It had been almost two years after Hurricane Katrina, petitioner was making substantial loan and insurance payments for a boat he could not use and the boat was not being repaired. Further, his insurer had just informed him the insurance would not be renewed. The boat had to be moved so the damages could be repaired and additional damages could be mitigated."[36] Explaining the effect of these damages, Schmid claims Dennis Schmid faced "severe financial constraints caused by mounting monthly mortgage payments coupled with the extended time to repair the boat. The note is almost $6,000 per month, the boat had extensive damage . . . petitioner was advised his insurance would not be renewed due to the damage to the vessel."[37] MarineMax, Schmid claims, was aware of the mortgage on the boat and aware of the extensive damage to the boat.[38]

It is unclear that Schmid's version of events is accurate because, as noted in the Release and confirmed in Schmid's answers to interrogatories, Schmid did not pay any money to MarineMax for storage to the Cleopatra.[39] Rather, the terms of the Release—MarineMax waived its claim for storage of the Cleopatra and Schmid released all claims against MarineMax on behalf of itself and its insurers—describe the facts surrounding the signing of the Release. Assuming for purposes of Summary Judgment that Schmid's allegations are correct, however, these facts do not constitute duress. Even if MarineMax did temporarily deprive Schmid Inc. of possession of the Cleopatra, this only deprived Schmid Inc. of access to a pleasure craft that had been battered by Hurricane Katrina and was, by Schmid's admission, unusable. This cannot "destroy free agency without present means of protection" and is therefore not duress.

---

[36] Exhibit "C," Schmid's Answer to MarineMax's Interrogatory No. 6.
[37] Exhibit "C," Answer to MarineMax's Interrogatory No. 17.
[38] *Id.*
[39] See the Release, Exhibit "A," paragraph 1; Exhibit "C," Schmid's answer to Interrogatory No. 18 ("No money was paid to MarineMax by Mr. Schmid.")

**C.      Temporarily withholding use of a pleasure craft does not deny free agency.**

Schmid did not *need* the Cleopatra such that it was compelled to sign the Release because the sole use for the Cleopatra was as a pleasure craft, as Schmid admits.[40] To the contrary, Schmid's own pleadings establish that Schmid had not and could not use the Cleopatra for its intended purpose, regardless of MarineMax's allegedly improper keeping the Cleopatra.  The vessel, according to Schmid, had been mishandled and unused since Katrina—it had a repair estimate of $236,095.26.[41] The Cleopatra was not inspected until eight months after the hurricane.[42] Following that, it was improperly repaired by Mr. Gassen, which took another five months.[43] It was subsequently removed to an empty cement facility and was a target of salvage.[44] According to Schmid, before MarineMax ever saw the Cleopatra, it had languished for more than a year and suffered substantial damages.  Even if MarineMax deprived Schmid, Inc. of use of the Cleopatra, this was not compulsion which, in effect, substituted the will of the MarineMax for the will of the Schmid.[45] Temporarily depriving Schmid of the use of an inoperable pleasure craft is not duress.

Under Texas and Louisiana law, the repairer of a vessel has a right to retain possession until payment is completed.[46] There can be no claim for duress if, assuming MarineMax did

---

[40] Exhibit "C," Answer to Interrogatory No. 19. In response to a prompt of "Please describe the past and anticipated use of the CLEOPATRA, including how you allege that anticipated use was negatively affected by MarineMax," Schmid responded: "Pleasure.  The anticipated use was negatively affected by MarineMax by delay in use, loss of insurability and financial loss."

[41] Schmid's Petition, paragraph XV (CM/ECF Doc. No. 1-2).

[42] *Id.*, paragraph VII.

[43] See Schmid's Petition, paragraph X (CM/ECF Doc. No. 1-2).

[44] See Second Amended Complaint, Exhibit "B," paragraphs 3 – 5 (CM/ECF Doc. No. 41).

[45] *Hurt v. Standard Oil Co.,* 444 S.W.2d 342, 347 (Tex.Civ.App.—El Paso 1969, no writ)

[46] See *Allstar Refinishing & Collision Center, Inc. v. Rosas*, 2009 WL 481885 (Tex. App. –Eastland, 2009); TEX. PROP.CODE ANN. § 70.001 (Vernon 2007) ("A worker in this state who by labor repairs an article, including a vehicle, motorboat, vessel, or outboard motor, may retain possession of the article until:
  (1) the amount due under the contract for the repairs is paid; or
  (2) if no amount is specified by contract, the reasonable and usual compensation is paid.
See also *Domingue v. Huval*, 261 So.2d 88 (La. App. 1972) ("We agree with the trial judge that defendant Huval had the right to retain possession of the tractor until he received payment for the

threaten to withhold the Cleopatra temporarily, MarineMax had a legal right to do so.

Schmid does not cite any threat to the Cleopatra, nor does it claim that MarineMax threatened to withhold the Cleopatra from Schmid permanently. Rather, Schmid only claims that MarineMax would not ship the Cleopatra for repairs on that day if Dennis Schmid did not sign a release.[47] If Dennis Schmid felt pressured to enter into the release, he could have waited for another day, another week, or another month and negotiated. That he failed to do so argues against pressure to sign the Release. Schmid does not allege MarineMax refused to release the Cleopatra at all.[48] Even if MarineMax did make a threat sufficient to establish duress, Schmid Inc. had an open remedy it failed to use: the judicial system.[49] Assuming Schmid Inc's allegations are true and MarineMax refused to turn over the Cleopatra, Schmid cannot establish duress. Schmid's open and obvious alternative—filing suit against MarineMax—vitiates its claim for duress as a matter of law.[50]

---

[   ] repairs which he made to that piece of machinery.") (citing LSA-R.S. 9:4501-4502; LSA-C.C. art. 3217(2); *Thompson v. Warmack*, 231 So.2d 636 (La.App. 3 Cir. 1970); Daggett, Louisiana Privileges and Chattel Mortgages, Section 86 (1942), p. 376.

[47] See Exhibit "C," Answer to Interrogatory No. 8. ("Mr. Schmid agreed to let MarineMax send the boat to South Texas for repairs. Approximately two days later, Mr. Gaffen advised Dennis Schmid at approximately 8:00 AM that the boat was prepared to be shipped to South Texas at 9:00 but would not be shipped unless Dennis Schmid signed a release."

[48] *Brown v. Cain Chemical, Inc.*, 837 SW 2d 239 - Tex: Court of Appeals, Houston 1992 (noting the requirement of a threat to establish duress); see also *Hurt v. Standard Oil Co.,* 444 S.W.2d 342, 347 (Tex.Civ.App.—El Paso 1969, no writ).(noting the absence of a threat adequate to establish duress when the employer offered appellant early retirement despite the claimant's contrary desire. The court held: "While he was not given any choice about early retirement, nowhere in the testimony was he compelled to accept the listed benefits against his will. He could have refused the benefits and instituted his suit")

[49] See *Beijing Metals & Minerals Import/Export Corp. v. American Business Center, Inc.*, 993 F.2d 1178 (5th Cir. 1993) (applying Texas law and concluding that there is no evidence of duress in part because "there is no evidence in the summary judgment record to indicate that ABC could not pursue its legal remedies.") see also *Hartsville Oil Mill v. United States,* 271 U.S. 43, 49, (1926) ("Where an alternative may take the form of a legal remedy, a threat to breach a contract does not constitute duress unless there is evidence of some probable consequences therefrom for which the legal remedy afforded by the courts is inadequate.")

[50] *Id.*; see also *Lee v. Wal-Mart Stores, Inc.*, 34 F.3d 285, 291 (5th Cir. 1994) ("Here, Lee, (the party alleging duress), a sophisticated and successful businessman, has produced no evidence that he had no other options besides entering into the less favorable lease. He could have sued Wal-Mart, and pursued his legal remedies in the courts.") (citing *Hartsville Oil Mill v. United States,* 271 U.S. 43, 46-49, 46 S.Ct. 389, 391, 70 L.Ed. 822 (1926) (holding that the plaintiff had failed to prove its

### D. There is no duress because Schmid does not claim MarineMax was responsible for Schmid's alleged economic hardship.

Under Texas law, "economic duress may be claimed only when the party against whom it is claimed was responsible for claimant's financial distress."[51] Louisiana follows a similar standard, limiting economic duress to the employer/employee context.[52] To prove economic duress, Schmid must establish that undue or unjust advantage has been taken of Schmid's economic necessity or distress so as to coerce him into making an agreement.[53] Schmid establishes that MarineMax may have been aware that Schmid had to make mortgage payments on the Cleopatra,[54] but Schmid does not claim that MarineMax was responsible for Schmid's financial distress or that anything MarineMax did, or failed to do, would have changed Schmid's obligation. Even if the Cleopatra had been returned to Schmid wholly repaired, Schmid would still owe its mortgage payments, which are related to the purchase, not the repair, of the Cleopatra. Nor is the termination of Schmid's insurance coverage a source of financial distress—after Hurricane Katrina caused an alleged $236,095.26 in damages, Schmid does not allege how MarineMax's alleged action or inaction caused the denial of coverage. Therefore

---

duress claim based on a breach of contract because, in part, it had presented no evidence "that the legal damages for such breach of contract would not have been adequate to compensate for its loss")).

[51] *First Texas Savings Association v. Dicker Center, Inc.,* 631 S.W.2d 179, 185-86 (Tex.App.-Tyler 1982, no writ).

[52] See e.g. *Wilson v. Aetna Casualty & Surety Company*, 228 So. 2d 229 – (La. App. 3d Cir. 1969) (finding an "illiterate, aged plaintiff with no family, who was under serious financial pressure and in the intolerable position of having to leave the hospital; having to pay a hospital bill; having to pay for future nursing care, and having only one source to raise funds" who "had no bargaining power to resist the defendant's offer and was instead under strong economic duress to accept it." The Court nonetheless concluded: "[W]e are unable to find that these constitute a ground recognized by our law for the rescission of a compromise." see also *Utley-James v. State, Div. Of Admin*., 593 So. 2d 1261 – (La. App. 1st Cir. 1991) (denying a finding of economic duress because the defendant's actions were not "designed to create an economic hardship" on the plaintiff); *Shepherd v. Allstate Ins. Co.,* 562 So.2d 1099 (La.App. 4th Cir.1990) (citing *Wilson v. Aetna Casualty & Sur. Co.,* 228 So.2d 229 (La.App. 3rd Cir.1969)). (concluding that "financial strait does not constitute duress.")

[53] *First Texas Sav. Ass'n of Dallas v. Dicker Center,* 631 S.W.2d 179, 186 (Tex.App.—Tyler 1982, no writ); 17 C.J.S. *Contracts,* § 177 (1963).

[54] See Exhibit "C," Answer to Interrogatory No. 17.

MarineMax was not responsible for Schmid, Inc's financial distress and summary judgment is proper.[55]

## **CONCLUSION**

Dennis Schmid signed a Release, waiving any claim against MarineMax relating to the M/V CLEOPATRA.  In consideration for this Release, MarineMax waived any claim for payment from Mr. Schmid.  According to Schmid, MarineMax threatened that it would not send the vessel to another repair shop for some unspecified amount of time.  With all assumptions made in favor of Schmid, MarineMax did not threaten any harm to the M/V CLEOPATRA, nor did it threaten or cause any additional financial burden to Dennis Schmid.

According to Schmid, MarineMax only temporarily deprived Schmid of the use of a pleasure craft.  This is not duress.  Moreover, even assuming Dennis Schmid was aggrieved, he signed the Release rather than pursue legal remedy or delay the shipment of the boat from MarineMax to South Texas.  The open availability of the legal system to redress his alleged injury vitiates a claim for duress.  That he now, through the lens of litigation, may regret that decision is not grounds for duress.  Finally, Schmid, Inc. does not allege that MarineMax caused him financial distress, so he cannot establish economic duress.  Under the legal standard of Texas or Louisiana, Mr. Schmid's alleged temporary delay in use of a pleasure craft—a craft damaged not by MarineMax, but by Hurricane Katrina—is not duress.  Accordingly, MarineMax respectfully requests that summary judgment be granted in its favor and that Schmid Inc's claims and Standard Fire's claims be dismissed with prejudice.

---

[55] See Supra note 52; see also *Martco Partnership v. Frazier*, 787 So. 2d 1196 (La. App. 3d Cir. 2001) (even though the plaintiff gave up a lease on a home, quit his job and removed his children from school in order to receive a signing bonus, there was no duress.)

Respectfully submitted,

**DUNCAN, COURINGTON & RYDBERG, L.L.C.**

/s/ *Elton F. Duncan III*

**ELTON F. DUNCAN III, T.A. (#14967)**
**HARRY E. MORSE (#31515)**
**KELLEY A. SEVIN (#25871)**
400 Poydras Street, Suite 1200
New Orleans, LA  70130
Telephone: (504) 524-5566
Facsimile: (504) 524-9003
E-Mail: eduncan@duncour.com
E-Mail: hmorse@duncour.com
E-Mail: ksevin@duncour.com
Attorneys for defendant and cross-defendant,
MarineMax Tx, LP

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing pleading has been served upon all counsel of record, via e-mail, through CM/ECF electronic filing, this 26th day of January, 2010.

/s/ *Elton F. Duncan III*