UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SCHMID ENTERPRISES, INC | CIVIL ACTION NO. 07-cv-8552 |
| VERSUS | SECTION "F"<br>JUDGE MARTIN L. C. FELDMAN |
| THE STANDARD FIRE INSURANCE<br>COMPANY AND WILLIAM GASSEN | MAGISTRATE (5)<br>MAGISTRATE ALMA L. CHASEZ |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
AGAINST SCHMID ENTERPRISES, INC. AND
<u>STANDARD FIRE INSURANCE COMPANY</u>**

**MAY IT PLEASE THE COURT:**

Dennis Schmid signed a document titled GENERAL RELEASE AGREEMENT IN SETTLEMENT OF ALL CLAIMS, which "does hereby release and forever discharge MarineMax and Sea Ray . . . from any and all legal action." The plaintiff, Schmid, Inc., and its insurer, Standard Fire, now claim the Release does not apply. Schmid, Inc. and Standard Fire argue that Mr. Schmid signed the Release in his personal capacity, but the plaintiff is really his corporation, Schmid Enterprises, Inc. They also argue that that there was no contract and that there is a fact question as to duress. None of these claims creates a fact question or challenges MarineMax's Motion. Taking all facts in a light most favorable to Schmid, MarineMax sent Schmid a Release, which he failed to read but nonetheless signed. In that Release, Dennis Schmid signed as the owner of the Cleopatra, whether individually or as Schmid, Inc. For the following reasons and for all the reasons in MarineMax's Motion for Summary Judgment, there is no duress as a matter of law and the Release prohibits Schmid's suit. MarineMax respectfully moves this honorable Court to grant summary judgment in its favor, dismissing the claims of Schmid, Inc. and Standard Fire with prejudice.

**A.    Dennis Schmid released all claims, whether by Schmid Enterprises, Inc. or by himself, for the Cleopatra against MarineMax.**

Both Schmid, Inc. and Standard Fire claim the Release is irrelevant because Dennis Schmid signed the Release, but Schmid, Inc. is the plaintiff in this lawsuit. Standard Fire goes so far as to accuse MarineMax of "deliberately withhold[ing the argument] from its supporting memorandum . . . so as to sandbag the opposition with questionable arguments that are beyond [Standard Fire's] ability to respond."[1] The citations Schmid, Inc. and Standard Fire make are inapplicable.

Schmid, Inc. and Standard are at pains to point out that there is a difference between a party's personal capacity and his corporate capacity. Texas—and insofar as undersigned counsel knows, every state—recognizes the distinction between corporations and their officers.[2] However, it does not follow from this truism that a corporate officer can sign a contract personally, then avoid its terms by bringing suit his corporate capacity, which Schmid is evidently trying to accomplish. In the Release, Mr. Schmid is defined as "Customer."[3] The Release recites that "**Customer** purchased a Sea-Ray 480 with serial number SEPR4223I899 and Stock Number 8906." It continues: "MarineMax and **Customer** have been in an ongoing dispute regarding storage and servicing of the Boat." The next paragraph states that "**Customer** has agreed to release and hold harmless MarineMax . . ." Under the paragraph "**Customer's** General Release, states that "I, **Customer**, for and on behalf of himself, his heirs, personal representatives, successors, assigns, employees, agents, attorneys, servants, and insurers, releases MarineMax "from any and all legal action."[4]

---

[1]   See Standard Fire's Opposition, p. 9, fn. 32.
[2]   See e.g. *Citizens United v. Federal Election Commission*, No. 08-205, ___ U.S. ___ (Jan. 21, 2010) (discussing the rights of corporations versus the rights of the individuals constituting the corporations.)
[3]   Exhibit "A" to MarineMax's Motion for Summary Judgment (CM/ECF Doc. No.71-5).
[4]   *Id.* (emphasis added.)

It is facially apparent from the Release that "Customer" is the party with the capacity to enter into the Release—the party that purchased the Cleopatra, the party that owned the Cleopatra, and the party that had the capacity to release any potential claims against MarineMax.[5] If Schmid, Inc. owns the Cleopatra, Dennis Schmid must have been signing on behalf of Schmid, Inc. and the Release is binding against Schmid, Inc. For Schmid and Standard Fire to say that the Release is inapplicable because Dennis Schmid entered into the Release, but Schmid, Inc. filed suit, is to ignore the text and context of the Release and the applicable law.

Under Texas law, whether a signature is within the signee's corporate or personal contract is determined by the contract itself. The failure of a corporate officer to affix his corporate capacity to a signature does not make the corporate officer personally liable on the contract.[6] Where the body of a contract makes it obvious it is a corporate contract, the signature of the corporate officer does not render it the officer's personal contract.[7] As long as the contract is signed by the necessary or proper officers or agents, no particular form of signature is required, provided it is apparent that it is the corporation's contract and not the individual undertaking of its agent."[8]

In *Rubashkin*,[9] which Standard Fire cites to make its case, the Texas First Circuit upheld the release at question. Even though the corporate president did not know its terms and the Release was negotiated by Westfield Development's counsel, the corporation was held bound by the actions of its agents. The case argues against Standard Fire's position. Mr. Schmid was acting as the vessel owner, but at the very least, he was acting as an agent of the vessel

---

[5] See MarineMax's Requests for Admission to Schmid, Inc., attached hereto as Exhibit "A," Request for Admission No. 6, and Schmid, Inc's responses, attached hereto as Exhibit "B."
[6] *Robertson v. Bland,* 517 S.W.2d 676, 678 (Tex.Civ.App.-Houston [1st Dist.] 1974, writ dism'd); see also *Gulf & Basco Co. v. Buchanan*, 707 S.W.2d 555 (Tex. App. 1st Dist. 1986).
[7] *Id.*, citing 19 Am.Jur.2d 752, Corporations § 1346.
[8] *Id.*, citing 19 C.J.S . Corporations § 1138, pp. 707-708.
[9] *Westfield Development, Inc. v. Rubashkin*, 2007 WL 491115 (Tex. App. –Houston [1st Dist.] 2007).

owner.[10]  "Customer" in the Release is the party able to enter into the Release.  Under Texas law, Mr. Schmid cannot sign the Release personally, then hide behind his corporate veil in filing suit.[11]  As long as Mr. Schmid had the capacity to enter into a Release as or on behalf of the owner of the Cleopatra, the Release is binding as to Mr. Schmid and Schmid, Inc.

**B.     There was a meeting of the minds.**

Standard Fire next argues that the Release is void because there was no meeting of the minds.  Standard Fire is attempting to back-door a fraudulent inducement argument by alleging that MarineMax fraudulently induced Schmid to sign the Release by misconstruing its terms.  However, this argument is foreclosed to both Standard Fire and Schmid, Inc. by Schmid's discovery responses.  In response to MarineMax's Request for Admission No. 3, "Please admit the Release was not induced by fraud," Schmid responded:  "Admitted."[12]  Schmid and Standard Fire are both bound by this admission.

Even if there were no such request for admission, Standard Fire is incorrect on the law.  Standard Fire cites two Texas cases, *Williams v. Glash* [13] and *Washington v. Reliable Life Ins. Co.*[14]  Neither applies.  *Williams* pertains to an issue not present in this case:  mutual mistake of fact.  In *Williams*, the plaintiff signed a release with her insurer before realizing she had a personal injury claim.[15]  The court concluded that neither party knew of the personal injury claim when the release was signed, so this mutual mistake may have made the release unenforceable as to the plaintiff.  *Washington* also dealt with an insurance Release, implicating

---

[10]   See *Latch v. Gratty, Inc.*, 107 S.W.3d. 543, 547 (Tex. 2003). ("The mere fact that Latch signed the agreement without indicating his agency is no evidence that he acted individually. An agent need not disclose his or her principal's identity in order to act on behalf of that principal. Rather, an agent who signs a contract on behalf of an undisclosed principal is liable on the contract.")

[11]   See e.g. *Stacy v. Energy Mgmt. Group Ltd., Inc.*, 734 S.W.2d 149 (Tex. App. – Houston [1st Dist.] 1987).  (Stacy signed an agreement as an officer of General Products, Inc.  The court concluded that the "conflicting assertion of capacity [was] not sufficient to raise a fact issue" to defeat summary judgment.)

[12]   See Exhibit "B," Request for Admission No. 3.

[13]   789 S.W.2d 261 (Tex. 1990).

[14]   581 S.W.2d. 153 (Tex. 1979).

[15]   789 S.W.2d at 265.

the special duties and responsibilities between an insured and an insurer. Standard Fire misrepresents the holding. In *Washington*, Reliable entered into a release with the beneficiary of a life insurance policy where Reliant agreed to repay the premium on its policy in exchange for benefits under the Policy. Reliable never actually paid the premiums, so the Court found there was no consideration for the release.[16] There is clearly consideration in MarineMax' waiving any payment—even if disputed—for storage of the vessel. There is also consideration under the instant facts in that MarineMax found South Texas Yachts, the subsequent repairer, and prepared the Cleopatra to be sent. Finally, there is the recited consideration in the Release.

Standard Fire further claims Mr. Schmid was told the Release was necessary for MarineMax to send the Cleopatra to South Texas, but that MarineMax misled Mr. Schmid about the contents of the Release, so there was never an agreement. Mr. Schmid's deposition tells a different story. Mr. Schmid testifies that "[MarineMax] said that they were getting ready to put the boat in the water and have it towed over there, but he needed to fax me over a **release letter** so they could have it towed over there. So I was like a dumb ass [*sic*], I didn't read it. I just assumed I was signing something for them to move the boat over there, which I did. And as we find out, I released them of all their claims against the boat."[17] Under Texas law, a party who fails to read a contract but signs it nonetheless is bound by the terms of that contract,[18] Mr. Schmid's opinion of his mental acuity notwithstanding.

Schmid also cites to *Texas Employers' Ins. Ass'n v. McCarty*,[19] arguing that MarineMax' alleged deceit about the contents of the Release renders it moot. This citation is profoundly misleading. Mr. McCarty entered into a release when he had been refused hospital treatment

---

16   581 S.W.2d. at 157.
17   Mr. Schmid's deposition, CM/ECF Doc. No. 73-2, p. 58-59. (emphasis added.)
18   See *In re U.S. Home Corp.*, 236 S.W.3d 761, 764 (Tex. 2007). ("Like any other contract clause, a party cannot avoid an arbitration clause by simply failing to read it.")
19   60 S.W.2d 1069 (Tex.Civ.App. 1933).

and he was "suffering intense pain," when his insurer told him he could not get medical treatment unless and until he signed the release. The agent "knew [Mr. McCarty was a poor man . . . that [he] was very sick, suffering intense pain, and was in need of immediate treatment." Moreover, Mr. McCarty "was mentally unable to understand the nature of the contract because of his sickness and suffering."[20] The case is inapplicable.

**C.  Neither Schmid, Inc. nor Standard Fire have created a fact issue regarding duress to survive summary judgment.**

Neither Schmid, Inc. nor Standard Fire appear to contest that, assuming all other facts and argument in Schmid's favor, MarineMax did not cause Schmid's alleged financial distress. Schmid and Standard Fire do not assert any facts to constitute any non-financial duress. Schmid and Standard Fire only argue that MarineMax knew Schmid had to make mortgage payments on the Cleopatra. There is no causal link between the allegations of MarineMax's wrongdoing and Schmid's alleged dire financial straits. Therefore, as a matter of law, there is no duress.[21] The remainder of Schmid's and Standard Fire's arguments are equally unavailing, nor do they overcome the facts and law in the record and in MarineMax's Memorandum in Support.

**CONCLUSION**

As described in MarineMax's Motion for Summary Judgment, Dennis Schmid signed a Release, waiving any claim against MarineMax relating to the Cleopatra. Schmid signed as "customer," the owner of the Cleopatra. Schmid and Standard Fire allege that MarineMax threatened that it would not send the vessel, a pleasure craft, to another repair shop for some

---

[20]  *Id.* at 1070.
[21]  See e.g. *Gray Law, L.L.P. v. T & H Partners, Ltd.* 2009 WL 2414298 (Tex. App. – Forth Worth); *Deer Creek Ltd. v. North Am. Mortgage Co.,* 792 S.W.2d 198, 203 (Tex.App.-Dallas 1990, no writ); ("However, the economic duress exception may be claimed only when the party against whom it is claimed was responsible for the claimant's financial distress.")

(6)

unspecified amount of time.  MarineMax did not threaten any harm to the Cleopatra, nor did it threaten or cause any additional financial burden to Dennis Schmid.

Therefore, for all the foregoing reasons and for all the reasons in MarineMax's Motion for Summary Judgment, MarineMax respectfully requests that summary judgment be granted in its favor and that Schmid Inc's claims and Standard Fire's claims be dismissed with prejudice.

Respectfully submitted,

**DUNCAN, COURINGTON & RYDBERG, L.L.C.**

/s/ _____
**ELTON F. DUNCAN III, T.A. (#14967)**
**HARRY E. MORSE (#31515)**
**KELLEY A. SEVIN (#25871)**
400 Poydras Street, Suite 1200
New Orleans, LA  70130
Telephone: (504) 524-5566
Facsimile: (504) 524-9003
E-Mail: eduncan@duncour.com
E-Mail: hmorse@duncour.com
E-Mail: ksevin@duncour.com
Attorneys for defendant and cross-defendant,
MarineMax Tx, LP

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing pleading has been served upon all counsel of record, via e-mail, through CM/ECF electronic filing, this 8TH day of March, 2010.

/s/ _____