```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


SCHMID ENTERPRISES, INC.            *      CIVIL ACTION

v.                                  *      NO. 07-8552

THE STANDARD FIRED INS. CO.         *      SECTION "F"
and MARINEMAX TX, LP
```

ORDER AND REASONS

Before the Court is MarineMax Tc, LP's Motion for Summary Judgment. For the reasons that follow, MarineMax's motion is GRANTED.

Background

This is a dispute arising out of Hurricane Katrina damage to a vessel.  The plaintiff, Schmid Enterprises, Inc. owns a Sea Ray 480 (the Cleopatra), which was insured by the Standard Fire Insurance Co. Schmid purchased the Cleopatra from defendant MarineMax. Dennis Schmid is the president of Schmid Enterprises, and lived on the vessel for a period of time prior to Hurricane Katrina. The vessel was moored on the southshore of Lake Pontchartrain when Hurricane Katrina made landfall in August 2005, and was damaged by the winds and waves. After the vessel suffered damage, Schmid attempted to have it repaired. It is from these attempts to have the vessel repaired that Schmid's claims arise.

After eight months, the vessel was transported by Standard

1

Fire, Schmid's insurer, to the northshore, where it was stored outside without protection from the elements. During this time the vessel suffered more damage. After five more months the vessel was shipped to MarineMax in Houston; MarineMax had sold Schmid the vessel and said it could fix it. MarineMax also held the vessel outside and without protection from the elements for roughly fifteen months. MarineMax had told Schmid that it would be able to fix the vessel, and that it was indeed doing repairs on the vessel while the vessel was in its possession. However, after time had passed, MarineMax eventually informed Schmid that it would not be able to perform the repairs on the vessel. MarineMax also told Schmid that South Texas Yacht Services would be able to perform the repairs and recommended that Schmid allow it to ship the vessel to South Texas so repairs could commence. Schmid agreed. Before the vessel was shipped to South Texas, MarineMax told Schmid that a release needed to be signed. Dennis Schmid signed the release, apparently without reading it. The text of the release purports to release MarineMax from liability for any claims arising from damage during storage of the vessel, as well claims under any other legal theory, in exchange for MarineMax not seeking payment for the storage of the vessel or any services rendered as consideration.

    MarineMax now moves for summary judgment, claiming that, as set forth in the release, Schmid has validly released all claims

it potentially has against MarineMax, and that Schmid and Standard Fire's claims must be dismissed with prejudice. Schmid disagrees, and argues that Dennis Schmid did not know that the release purported to release MarineMax from all claims against it when he signed it, and that he signed it in his individual capacity such that Schmid Enterprises was not bound. Schmid also claims that the release was accomplished by fraud, and that there was no consideration for it because payment for storage of the vessel had never been discussed and Schmid did not know payment was due. Schmid further claims that the release was signed by Dennis Schmid because he was under economic duress due to the circumstances of the mortgage and insurance payments, and that MarineMax knew about these circumstances and took advantage of Schmid's vulnerable position to coerce a signing of the release.

## I. Standard for Summary Judgment

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law.  No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986).  A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987). Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

## II. Choice of Law

Under Louisiana choice of law rules, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue. Coury v. Moss, 529 F.3d 579, 584 (5th

Cir. 2009). That state is determined by analyzing (1) the pertinent contacts of each state to the parties and that transaction, including the place of negotiation, formation, and performance of the contract, the location of the object o the contract, and the place of domicile, residence, and business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies of facilitating the orderly planning of transactions, or promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other. Id.

Schmid Inc. is a Delaware corporation, Dennis Schmid is a Texas domiciliary, and MarineMax is a Texas corporation. The vessel was sent to MarineMax in Texas, where it was to be repaired. The vessel remained in Texas when Dennis Schmid signed the release, which he did in Texas. All actions relating to Schmid Inc.'s claims against MarineMax occurred in Texas. Also, the release stipulates that Texas law will apply. All parties assume and agree that Texas law will apply.

### III. Validity of Release

Dennis Schmid signed a release purporting to free MarineMax from all liability. MarineMax asserts that this release is valid, and the Schmid suit should be dismissed. A defendant moving for summary judgment on an affirmative defense of release has the burden to conclusively establish that defense. Diversicare Gen. Partner, Inc. v. Rubio, 185 S.W.3d 842, at 846 (Tex. 2005)

(evaluating summary judgment evidence on affirmative defense of limitations). "[I]n order to establish their affirmative defense of release, the appellees must prove the elements of a contract." <u>Vera v. North Star Dodge Sales, Inc.</u>, 989 S.W.2d 13, 17 (Tex.App.-San Antonio 1998). Under Texas law, a contract must be achieved by mutual assent of the parties demonstrated through offer and acceptance, and must be supported by consideration. <u>Prime Products, Inc. V. S.S.I Plastics, Inc.</u>, 97 S.W.3d 631, 636 (Tex.App.-Houston 2002). If the movant's summary judgment proof on its face establishes the movant's right to judgment as a matter of law, the burden shifts to the non-movant to raise a genuine issue of material fact sufficient to defeat summary judgment. <u>Lunsford Consulting Group, Inc. v. Crescent Real Estate Funding VIII, L.P.</u>, 77 S.W.3d 473, 475 (Tex.App.-Houston 2002). Thus, if MarineMax can show that the release was valid under contract principles, the burden will shift to Schmid to prove that there was some vice of consent which vitiated the contract. *See* <u>Id.</u>

    A. Relevance of the Release/Corporate Capacity

In its motion for summary judgment, MarineMax argues that the release signed by Mr. Schmid was valid because Mr. Schmid had authority to bind Schmid Enterprises. Though Schmid claims it cannot be bound by Mr. Schmid's signature, MarineMax claims the release is binding, and precludes any claims by Schmid

6

Enterprises against MarineMax. In response, Schmid Enterprises points out that it is not identified anywhere in the release, but that only Mr. Schmid is the signing party. Schmid Enterprises claims that because it was not named in the release, it cannot be bound by its terms. Standard Fire also opposes the motion for summary judgment, asserting that there was no relevant release between MarineMax and Schmid Enterprises because Dennis Schmid, and not Schmid Enterprises, signed the release. Standard Fire notes that Texas courts recognize a distinction between corporations and their presidents, and as the president and not the corporation signed the release, MarineMax should not be able to assert the release in this suit by the corporation.

MarineMax's supplemental memorandum in support of its motion for summary judgment is convincing on this point. MarineMax argues that Dennis Schmid signed the release as the owner of the vessel by the terms of the release. There is no dispute that Schmid Enterprises, a corporation, is in fact the owner of the vessel. Schmid Enterprises purchased the vessel from MarineMax, a fact Dennis Schmid was well aware of when he signed the release purporting to release "purchaser's" claims against MarineMax. Dennis Schmid had the authority to bind Schmid Enterprises as a corporate officer, and did so by signing the release as owner/purchaser of the vessel. Texas, like all other states, recognizes the distinction between corporations and their

officers. Beverly Foundation v. W.W. Lynch, 2009 WL 3518021, at *6 (Tex.App. Amarillo). Whether a signature is within the signer's corporate or personal capacity is determined by the contract. Robertson v. Bland, 517 S.W.2d 676, 679 (Tex.App.-Houston 1974). The fact that a corporate officer failed to state that he was signing in his corporate capacity does not automatically make the corporate officer personally liable on the contract. Id. Thus, a corporate officer can bind his corporation even if he does not specify he is doing so as long as it is clear from the document that so binding the corporation was his intention. In Westfield Development, Inc. v. Rubashkin, 2007 WL 491115 (Tex.App. Houston), the court upheld a release which was signed by the corporate president, even though he did not read it. Similarly, in this, Mr. Schmid admittedly failed to read the release, but signed it as the "owner" or "customer" of the vessel. From the text of the release it is clear that it was to be signed by the "customer" of the vessel; the purchaser of the vessel. The purchaser of the vessel was Schmid Enterprises, as admitted by all parties. Mr. Schmid, as president of Schmid Enterprises, had the capacity to enter into the release on behalf of Schmid Enterprises. MarineMax's argument that a corporate officer cannot sign a release personally and then avoid the terms of the release by bringing suit in his corporate capacity is also convincing. MarineMax also points out that Schmid Enterprises

should not be able to avoid the terms of a valid release simply because its corporate officer, Mr. Schmid, neglected to read the release before signing it.

B. Consideration/Worker's Lien

MarineMax claims that the release was signed by Mr. Schmid in exchange for valuable consideration; MarineMax would not seek payment for the storage, upkeep, and other services provided to the vessel while it was in their possession. In its memorandum, Standard Fire claims that there was no consideration, because there was no worker's lien which attached to the vessel. The crux of the argument is that Texas law provides for "worker's liens", which permit a repairman who has done repair work on property to retain that property until he is paid for the repair work. *See* TEX. PROP. CODE § 70.001 (2010). Standard Fire claims that there was no worker's lien, as no repair work was done. Thus, Standard Fire insists, MarineMax had no right to retain the vessel, and there was no legal basis for MarineMax's threat to retain the vessel if Schmid did not sign the release. Here, however, Standard fire seems to confuse an illegal threat (as needed to show duress) with lack of consideration.

Standard Fire's arguments as to consideration are not persuasive. Even if a worker's lien did not attach to the vessel and forbearance of that lien cannot be held to be consideration, MarineMax stored the vessel for more than a year. As set forward

9

in the release, payment for storage of the vessel was waived by MarineMax in exchange for the signing of the release.

C. Mutual assent

Standard Fire next argues that the release is not valid because it was obtained by fraud or misrepresentation, claiming that MarineMax told Dennis Schmid that the release was for shipment of the vessel to South Texas, and not that he was releasing all claims against it for damage to the vessel if he signed it. This arguments must also fail. In its response to interrogatories, Schmid admitted that the release was not induced by fraud. Additionally, failing to read the release, as Dennis Schmid did before he signed the release, does not under Texas law prevent that party from being bound by the contract. In re Home Corp., 236 S.W.3d 761, 764 (Tex. 2007).

IV. Economic Duress

In its second amended complaint, Schmid Enterprises alleges that, even if there was a release signed which would bind it, that release is vitiated for lack of consent because it was obtained through duress. In its motion for summary judgment MarineMax argues that there was no economic duress because financial constraints do not constitute duress unless caused by the party alleged to have forced the agreement. Schmid has stated that the financial constraints were due to mortgage payments and cancelled insurance, but that MarineMax was aware of those

constraints, and took advantage of Schmid's precarious financial position by threatening to hold the vessel if the release was not signed. MarineMax points out, however, that Schmid was not compelled to sign the release to get the vessel back and avoid financial ruin. Schmid, in fact, had not had access to the vessel for over two years at the time the release was signed.

Under Texas law, a valid release extinguishes a claim and bars recovery on the matter that has been released. <u>Dresser Indus., Inc. v. Page Petroleum, Inc.</u>, 853 S.W.2d 505, 508 (Tex. 1993). A release is subject to the rules governing contract interpretation, and thus will not be held valid if it was obtained by fraud, misrepresentation, or deceit, or if it was signed under duress. To prove a claim of duress in Texas, the plaintiff must establish: (1) a threat or action taken without legal justification; (2) the threat or action was one such a character as to destroy the other party's free agency; (3) the threat or action caused the opposing party's free will to be overcome and cause the other party to do that which it would not otherwise have done and was not legally bound to do; (4) the restraint was imminent; and (5) the opposing party had no present means of protection. <u>McMahan v. Greenwood</u>, 108 S.W.3d 467, 482 (Tex.App. Houston 2003). Importantly, under Texas law, a party cannot claim economic duress unless the party against whom it is claimed is responsible for the financial distress. <u>First Texas</u>

11

Savings Association v. Dicker Center, Inc., 631 S.W.2d 179, 185-86 (Tex.App.-Tyler 1982). Thus Schmid must prove that MarineMax not only took advantage of the financial distress to coerce the signing of the release, but also that MarineMax was at fault for the financial distress. Schmid cannot do so and has not done so.

But, even if all of the elements for duress were met, because this is a claim of economic duress, it must be proven that MarineMax caused the financial distress that Schmid found itself in and complains of. Though Standard Fire nominally addresses all of the issues of duress under Texas law in its memorandum, it does not argue that MarineMax is responsible for its financial distress. Neither does Schmid do so. MarineMax points out correctly that, even assuming all elements of economic duress are met, neither Schmid nor Standard Fire contests that MarineMax did not cause Schmid's financial distress.  Without establishing causation, there can be no claim of economic duress under Texas law.

Accordingly, the defendant's motion for summary judgment is GRANTED.

New Orleans, Louisiana, April 7, 2010

_____
MARTIN C. FELDMAN
UNITED STATES DISTRICT JUDGE